James Oliveira
Maria de Oliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | Case No.: CA 06 214 ML<br><br>**EMERGENCY**<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**[FRCP 65]** |

1. Comes now the Plaintiffs and move for a temporary restraining order ("TRO") and preliminary injunction to prevent Defendant "Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc." and its attorneys, Partridge Snow & Hahn LLP, from selling Plaintiffs' house at an unlawful nonjudicial foreclosure sale scheduled for May 16, 2006, until such time as the litigation is completed.

2. As shown by the attached Declaration, Defendant intends to sell Plaintiffs' property at a purported nonjudicial foreclosure sale.

3. As shown by the attached Declaration, Defendant has no legal justification to sell Plaintiffs' property.

**Facts**

4. There is a record in the county records (recorded on 7/21/2005 at Book L2429 Page 133 in the records of Providence County) appearing to show that on July 14, 2005, Plaintiffs entered into a consumer mortgage refinance transaction (Loan No. 10046020) with FIRST RESIDENTIAL MORTGAGE NETWORK ("First Residential"), through its employees, servants and agents in which the extended consumer credit was subject to a finance charge and was initially payable to First Residential.

5. First Residential did not make a loan to Plaintiffs.

6. Neither Plaintiffs, nor anyone related to Plaintiffs, ever received any dollars (as defined by Congress) from First Residential.

7. At all times relevant to this action, First Residential regularly extended and offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof. The obligation was secured by the Homestead and principal dwelling of Plaintiff. The obligation was initially payable to First Residential on the face of the note or contract. Thus First Residential was "the creditor" under 15 U.S.C. § 1602(f), 12 C.F.R. § 226.2, and 15 U.S.C. § 1635(a).

8. The mortgage was a "residential mortgage transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

9. Upon information and belief, neither First Residential, nor anyone related to First Residential, ever paid any consideration for the aforementioned Note and Mortgage.

10. At closing, First Residential failed to give all material disclosures required by the Truth in Lending Act, including without limitation, two copies of Notice of Right to Cancel.

11. Plaintiffs have a continuing right to rescind the transaction until the third business day after they receive all "material disclosures" pursuant to Section 125 (a) of the Act (15 U.S.C. 1635 (a)) and Regulation Z § 226.23 (a) (3) (12 C.F.R.§ 226.23 (a) (3)).

12. First Residential's alleged Mortgage stated:

"Lender" is First Residential Mortgage Network, Inc., DBA FRM Network, Inc., organized and existing under the laws of Kentucky. Lender's address is 9500 Ormsby Station Rd, Louisville, KENTUCKY 40223.

13. The alleged mortgage was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

14. MERS claims to be organized under the laws of Delaware. However, MERS is not in good standing in Delaware.

15. On or about August 26, 2005, Countrywide Home Loans, Inc. claimed to have been assigned the servicing rights by First Residential.

16. On or about September 19, 2005, First Residential mailed to Plaintiffs a notice stating that it had transferred its servicing rights to Countrywide. There was no mention of whether First Residential had changed or retained its alleged status as Lender.

17. On or about October 21, 2005, Countrywide mailed to Plaintiffs a Notice of Default.

18. On or about March 1, 2006, Plaintiff James Oliveira elected to rescind and timely gave Notice of Rescission to First Residential, satisfying 15 U.S.C. § 1635(a).

19. As a matter of law, at the moment the Notice of Rescission was received, First Residential's secured loan was transformed into an unsecured loan, pursuant to 15 U.S.C. § 1635(b).

20. First Residential had a duty to release the security interest, by recording a Full Satisfaction of Lien at the county recorder, within 20 days of receiving Plaintiffs' Notice of Rescission, pursuant to 15 U.S.C. § 1635(b).

21. First Residential failed to respond within 20 days of the Notice of Rescission.

22. First Residential failed to record any release of security interest.

23. On or about March 9, 2005, Mortgage Electronic Registration Systems, Inc. ("MERS") mailed to Plaintiffs a document titled "Assignment of Note and Mortgage" in which MERS claimed to be "the present holder of that certain note and mortgage" and claimed to have assigned "all of its rights, title and interest" to Countrywide Home Loans,

Inc. for the benefit of DB Structured Products, Inc.; with a renumbering the loan to No. 94728651.

24. MERS claimed to have made this assignment "for valuable consideration." However, upon information and belief, there was no such consideration.

25. On or about March 24, 2006, a document titled "Notice of Foreclosure" and "Mortgagee's Sale" was mailed to Plaintiffs by Partridge Snow & Hahn LLP, who identified themselves as "Attorneys for Holder of the Mortgage" but never identified who the alleged holder of the mortgage was. This document stated that the property will be sold May 16 2006, "pursuant to the power of sale contained in a mortgage dated July 14, 2005, given to Mortgage Electronic Registration Systems, Inc., as nominee for First Residential Mortgage Network, Inc., d/b/a FRM Network, Inc, and currently held by Countrywide Home Loans, Inc., for the benefit of DB Structured Products, Inc., as mortgagee, by James Oliveira and Maria L. DeOliveira, as mortgagors." However, the power of sale was given to First Residential, not to MERS. A servicer such as Countrywide normally does not have power of sale, and there is no evidence that First Residential ever assigned its power of sale.

26. Plaintiff James Oliveira has requested validation and verification of the debt under the Fair Debt Collection Practices Act. So far, Partridge Snow & Hahn LLP has not responded.

27. On or about April 19, 2006, Plaintiffs gave Second Notice of Rescission to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.; to Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.; to First Residential Mortgage Network; to DB Structured Products, Inc.; and to Charles A. Lovell, Partridge Snow & Hahn LLP, satisfying 15 U.S.C. § 1635(a).

28. First Residential failed to respond within 20 days of the Second Notice of Rescission.

29. First Residential continued to fail to record any release of security interest.

30. First Residential has not yet complied with the law regarding Plaintiffs' rescission of the loan.

**Standard**

31. The standard for granting a temporary restraining order ("TRO") is identical to that for a preliminary injunction. Hawai`i County Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); see also *CF Inflight, Ltd. v. Cablecam Systems, Ltd.*, 2004 WL 234372, *3 (E.D.Pa.2004); Lockheed Missile & Space Co. V. Hughes Aircraft Co., 887 F. Supp 1320, 1323 (ND. Cal. 1995).

32. In making its ruling on the propriety of a preliminary injunction, this court is bound by the considerations contained in the decision of Canal Authority of Florida v. Callaway and its progeny. Pursuant to this authority, the plaintiff in this matter has the burden of demonstrating to this court four specific criteria:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and

(4) that granting the preliminary injunction will not disserve the public interest.

Rodriguez v. United States, 66 F.3d 95, 97 (5th Cir. 1995); Hull v. Quitman County Bd. of Educ., 1 F.3d 1450, 1452 (5th Cir. 1993); Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974).

***PLAINTIFFS WILL PREVAIL ON THE MERITS***

33. There is a *prima facie* case that the pending sale is unjustified, because Plaintiffs rescinded the loan and because the parties First Residential has never assigned its status as Lender.

34. There is no chain of title of the Note and Mortgage leading to any of the Defendants. Therefore, Defendant has no interest in plaintiff's property and nothing to foreclose on. Absent any interest in the property, any purported foreclosure sale would be unlawful.

***PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED***

35. It is within judicial notice that the unwarranted and unlawful sale of someone's home at a purported foreclosure sale is harmful and irreparable. This is obvious. Without a preliminary injunction, Plaintiffs' credit ratings would be impaired and diminished with all the attendant consequences. Defendant will presumably proceed to an FED and eviction, since this is the universal practice in foreclosure cases. Plaintiffs would be ejected from their home and separated from their records, seriously impairing their ability to continue with the lawsuit. Plaintiffs would suffer all the hardships associated with being homeless. The psychological harm alone would induce severe emotional distress, loss of self-esteem, and embarrassment. Correcting the harmful acts at a later date cannot reverse the effects of the harm already done.

***THE THREATENED INJURY TO PLAINTIFFS OUTWEIGHS THE THREATENED HARM THE INJUNCTION MAY DO TO DEFENDANTS***

36. If Defendant sells Plaintiffs' home and then Plaintiffs prevail, Plaintiffs will suffer all the hardships listed above. These hardships, which money remedies would be inadequate to correct, would be immediate, continual, and irreparable, if an injunction is not granted. These damages cannot be calculated within a reasonable degree of certainty and are otherwise speculative. The injury would be of a continuing nature.

37. Conversely, if Defendant is prevented by the injunction from selling the home, and later prevails, then Defendant will merely have been obliged to wait a while before selling--at a time of rising home prices.

***GRANTING THE PRELIMINARY INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST***

38. An injunction forbidding Defendant from selling Plaintiffs' home will restrain no more than what is reasonably required. It will not affect any other members of the public and thus will not disserve the public interest. What is more, the irreversible sale of people's homes while litigation is still pending tends to alarm the public and undermine confidence in property ownership, not to mention security in one's castle. Wrongful and illegal sales are contrary to public policy.

**Conclusion**

39. Defendant should be restrained from selling, or purporting to sell, Plaintiffs' property at its scheduled foreclosure sale on May 16, 2006. Defendant should be restrained until such time as a preliminary injunction hearing can be held.

40. Defendant should be further enjoined from selling, or purporting to sell, Plaintiffs' property, pending resolution of the litigation in this case.

DATED May 9, 2006. By: James Oliveira
James Oliveira, plaintiff

DATED May 9, 2006. By: Maria L. Oliveira
Maria deOliveira, plaintiff

James Oliveira
Maria deOliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| James Oliveira,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | ) | Case No.: ______________<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, being over eighteen years of age, hereby certify that on the date last written below, a true and correct copy of:

1) EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

2) DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

3) MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, and

4)PROPOSED ORDER

was served on the following Defendants:

***BY TELEPHONE FASCIMILLE AND OVERNIGHT COURIER***
Countrywide Home Loans, Inc.
c/oPARTRIDGE SNOW & HAHN, LLP
Charles A. Lovell
180 South Main Street
Providence, RI 02903
(401) 861-8200 Phone:

(401) 861-8210 Fax:

FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC.
C/O CT CORPORATION SYSTEM
1 WEYBOSSET STREET
PROVIDENCE, RI 02903

Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.
C/O PRENTICE_HALL CORP SYSTEM
222 JEFFERSON BOULEVARD, SUITE 200
WARWICK, RI 02888

DB Structured Products, Inc.
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

by:

____X____OVERNIGHT COURIER, FedEx, Express Mail, UPS, or other
____X____United States Postal Service, ordinary first class mail
_________United States Postal Service, certified or registered mail, return receipt req.
_________Hand delivery
____X____Telephone Facsimile (when facsimile number available)
_________other (specify) ____________________

Dated: May 9, 2006

/s/ James Oliveira
James Oliveira

James Oliveira
Maria deOliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | Case No.: 06 214ML<br><br>**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [FRCP 65]** |

**Standard for temporary restraining order**

1. In making its ruling on the propriety of a preliminary injunction, this court is bound by the considerations contained in the decision of Canal Authority of Florida v. Callaway and its progeny. Pursuant to this authority, the plaintiff in this matter has the burden of demonstrating to this court four specific criteria:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and;

(4) that granting the preliminary injunction will not disserve the public interest.

2. Rodriguez v. United States, 66 F.3d 95, 97 (5th Cir. 1995); Hull v. Quitman County Bd. of Educ., 1 F.3d 1450, 1452 (5th Cir. 1993); Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974). Where the balance of harms strongly favors plaintiff, a serious question for litigation will justify a preliminary injunction even without a determination of probable success. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929); *see also Atchison, Topeka, & Santa Fe Ry. v. Wichita Bd. of Trade*, 412U.S.800,822n.15 (1973).

3. The central problem that gives rise to the need for preliminary injunctions is the risk that plaintiff will be irreparably injured before the slow processes of litigation can reach a final decision. But the solution to this problem has its own central problem: the court is more likely to err when it acts on partial information after a preliminary hearing, and such an error may lead to an order that causes irreparable injury instead of preventing it. In the face of these conflicting risks, "the preliminary injunction standard should aim to minimize the probable irreparable loss of rights caused by errors incident to hasty decision." John Leubsdorf, *The Standard for Preliminary injunctions*, 91 Harv. L. Rev.525,540-41 (1978). 7 The traditional four factors implement this standard if the relationship among them is properly specified. The risk of irreparable injury to plaintiff is explicitly one of the four factors; the risk of irreparable injury to defendant if the injunction is granted is considered under the balance of harms factor. The effect on the public interest allows consideration of any risk of harm to third parties or the general public. The risk of error is assessed under the probability of success factor. The key to making the traditional four factors work is to assess the risks of irreparable injury in light of the probability of success on the merits. If plaintiff is highly likely to win on the merits, the irreparable injury threatening plaintiff is more likely to be legally unjustified, and any threatened injury to defendant is more likely to be the justified consequence of the substantive law's allocation of rights. The opposite is true if plaintiff is unlikely to succeed on the merits. The threatened harms to each side should therefore be

5. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256.

6. Courts commonly say that plaintiff in a preliminary injunction case must prove some combination of four factors: probability of success on the merits, irreparable injury, balance of harm, and public interest. *See Hilton v. Braunskill*, 481U.S.770,776-77 (1987); *Camenisch*, 451 U.S. at 392.

Consideration of the "comparative injury" to each side was a "settled rule" at least by the time of *Russell v. Farley*, 105 U.S. 433,438 (1881). And this injury was already assessed in light of probability of success: "[I]f the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party." *Id.* The converse of this proposition is that where the legal right is more certain, the court is less reluctant to impose material injury on the party likely to lose. Where the balance of harms strongly favors plaintiff, a serious question for litigation will justify a preliminary injunction even without a determination of probable success. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929); *see also Atchison, Topeka, & Santa Fe Ry. v. Wichita Bd. of Trade*, 412U.S.800,822n.15(1973).

Respectfully submitted,

DATED May 9, 2006. By: James Oliveira
James Oliveira, plaintiff

DATED May 9, 2006. By: Maria L. Oliveira
Maria deOliveira, plaintiff