James Oliveira
Maria deOliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | ) | Case No. CA 06 214 ML<br><br>**DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

1. I, James Oliveira, am a citizen of the United States, domiciled at **56 Greene Street, Pawtucket, Rhode Island**, legally described as:

File Number: 205060636

That lot of land with the buildings and improvements thereon, situated on the westerly side of Greene Street in the City of Pawtucket, County of Providence, State of Rhode Island, laid out and delineated as Lot No. 85 (eighty-five) on that plat entitled, "Map of the Division of Land on Pleasant View in Pawtucket Belonging to B. F. Greene & H. Daniels Jonathan Chace William H. Gooding Chas. Moies Commissioners appointed by The Supreme Court March term 1879 Surveyed Nov. 1879 A. R. Sweet, C.E." and recorded in the Records of Land Evidence in the City of Pawtucket on Plat Card 183.

Said lot bounds easterly on Greene Street fifty (50) feet and holding that width extends westerly ninety-five (95) feet to and bounds westerly on land now or lately of David J. Reynolds et al, bounding northerly on land now or lately of Dosithee E. Sequin et al,

and southerly on land now or lately of Samuel M. Scungio et al in part and in part on land now or lately of Mary Skrabonja.

Being the same property conveyed to Maria L. DeOliveira and James Oliveira, by Quitclaim Deed dated January 10, 2005, of record in Book L2280, Page 63, in the Office of the Town Clerk of the City of Pawtucket, Rhode Island. Also, being the same property PREVIOUSLY conveyed to Maria L. deOliveira, by Quitclaim Deed dated June 18, 1998, of record in Book 993 Page 28, by Quitclaim Deed dated June 23, 1998 of record in Book 993 Page 29, and by Consent Judgment dated June 25, 1998, of record in Book 993, Page 30, in the Office aforesaid. Also, being the same property PREVIOUSLY conveyed to James Manuel Oliveira and Carla Orlando Oliveira, by Quitclaim Deed dated April 13, 1996, of record in Book 847, Page 69, in the Office aforesaid. Also, being the same property PREVIOUSLY conveyed to Jaime S. de Oliveira and Maria L. de Oliveira, his wife, by Warranty Deed dated August 14, 1969, of record in Book 672, Page 383, in the Office aforesaid.

Being the same property commonly known as: 56 Greene Street, Pawtucket, Rhode Island 02860

Tax ID No.: Plat 20, Lot 264

(hereafter "the Homestead").

2. I am the owner of the Homestead.

3. Title to the Homestead passed to me by way of Quitclaim Deed dated January 10, 2005, of record in Book L2280, Page 63, in the Office of the Town Clerk of the City of Pawtucket, Rhode Island; Quitclaim Deed dated June 18, 1998, of record in Book 993 Page 28, by Quitclaim Deed dated June 23, 1998 of record in Book 993 Page 29; Consent Judgment dated June 25, 1998, of record in Book 993, Page 30, in the Office aforesaid; Quitclaim Deed dated April 13, 1996, of record in Book 847, Page 69, in the Office aforesaid; and Warranty Deed dated August 14, 1969, of record in Book 672, Page 383, in the Office aforesaid.

4. I have had title to the Homestead since before Defendants made any claim to it.

5. I am, and have been, in continuous possession of the Homestead.

6. On or about February 27, 2006, I made a diligent search in the county records and I found that there are no Assignments of Deed in the county records related to the Homestead.

7. I also found that there are no Assignments in the county records of any Promissory Note, Security Interest, or any such document, signed by me.

8. There are no Appointments of Successor Trustee in the county records related to the Homestead.

9. There is a record in the county records (recorded on 7/21/2005 at Book L2429 Page 133 in the records of Providence County) appearing to show that on July 14, 2005, Maria deOliveira and I entered into a consumer mortgage refinance transaction (Loan No. 10046020) with FIRST RESIDENTIAL MORTGAGE NETWORK ("First Residential"), through its employees, servants and agents in which the extended consumer credit was subject to a finance charge and was initially payable to First Residential.

10. First Residential did not make a loan to us.

11. Neither Plaintiffs, nor anyone related to us, ever received any dollars (as defined by Congress) from First Residential.

12. At closing, First Residential did not give Maria deOliveira and me two copies of Notice of Right to Cancel.

13. First Residential's alleged Mortgage stated:

> "Lender" is First Residential Mortgage Network, Inc., DBA FRM Network, Inc., organized and existing under the laws of Kentucky. Lender's address is 9500 Ormsby Station Rd, Louisville, KENTUCKY 40223.

14. MERS claims to be organized under the laws of Delaware. However, I have seen evidence that MERS is not in good standing in Delaware.

15. On or about August 26, 2005, Countrywide Home Loans, Inc. claimed to have been assigned the servicing rights by First Residential.

16. On or about September 19, 2005, First Residential mailed to us a notice stating that it had transferred its servicing rights to Countrywide. There was no mention of whether First Residential had changed or retained its alleged status as Lender.

17. On or about October 21, 2005, Countrywide mailed to us a Notice of Default.

18. On or about March 1, 2006, I elected to rescind and timely gave Notice of Rescission to First Residential, satisfying 15 U.S.C. § 1635(a).

19. First Residential failed to respond within 20 days of the Notice of Rescission.

20. First Residential failed to record any release of security interest.

21. On or about March 9, 2005, Mortgage Electronic Registration Systems, Inc. ("MERS") mailed to us a document titled "Assignment of Note and Mortgage" in which MERS claimed to be "the present holder of that certain note and mortgage" and claimed to have assigned "all of its rights, title and interest" to Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.; with a renumbering the loan to No. 94728651.

22. MERS claimed to have made this assignment "for valuable consideration." However, I am informed and believe that there was no such consideration.

23. On or about March 24, 2006, a document titled "Notice of Foreclosure" and "Mortgagee's Sale" was mailed to us by Partridge Snow & Hahn LLP, who identified themselves as "Attorneys for Holder of the Mortgage" but never identified who the alleged holder of the mortgage was. This document stated that the property will be sold May 16 2006, "pursuant to the power of sale contained in a mortgage dated July 14, 2005, given to Mortgage Electronic Registration Systems, Inc., as nominee for First Residential Mortgage Network, Inc., d/b/a FRM Network, Inc, and currently held by Countrywide Home Loans, Inc., for the benefit of DB Structured Products, Inc., as mortgagee, by James Oliveira and Maria L. DeOliveira, as mortgagors." However, the power of sale was given to First Residential, not to MERS. I have seen no evidence that First Residential ever assigned its power of sale.

24. Plaintiff James Oliveira has requested validation and verification of the debt under the Fair Debt Collection Practices Act. So far, Partridge Snow & Hahn LLP has not responded.

25. On or about April 19, 2006, we gave Second Notice of Rescission to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.; to Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.; to First Residential Mortgage Network; to DB Structured Products, Inc.; and to Charles A. Lovell, Partridge Snow & Hahn LLP, satisfying 15 U.S.C. § 1635(a).

26. First Residential failed to respond within 20 days of the Second Notice of Rescission.

27. First Residential continued to fail to record any release of security interest.

28. First Residential has not yet complied with the law regarding Plaintiffs' rescission of the loan.

29. On or about March 24, 2006, Partridge Snow & Hahn LLP sent to Maria deOliveira a notice stating:

> You are hereby notified that the property ... will be sold at public auction on the premises on May 16, 2006 ... pursuant to the power of sale contained in a mortgage dated July 14, 2005, given to Mortgage Electronic Registration Systems, Inc., as nominee for First Residential Mortgage Network, Inc., d/b/a FRM Network, Inc. and currently held by Countrywide Home Loans, Inc., for the benefit of DB Structured Products, Inc., as mortgagee, by James Oliveira and Maria L. DeOliveira, as mortgagors. ... Your mortgage is currently in default for seven (7) payments.

30. This notice is false because there is no chain of title in the county records leading to "Countrywide Home Loans, Inc.," nor to "Countrywide Home Loans, Inc., for the benefit of DB Structured Products, Inc."

31. I timely disputed this notice under the Fair Debt Collection Practices Act. Partridge Snow & Hahn LLP has not yet responded.

32. On or about April 24, 2006, Partridge Snow & Hahn LLP placed in The Times Classifieds an advertisement stating:

MORTGAGEE'S
56 Green Street
Pawtucket, Rhode Island

> Will be sold at public auction on May 16, 2006, at 11 A.M. local time, on the premises, by virtue of the power of sale contained in a mortgage made by JAMES OLIVEIRA and MARIA D. DEOLIVEIRA, dated July 14, 2005, and recorded in the Records of Land Evidence of the City of Pawtucket, State of Rhode Island, in Book 2429 Page 133, the conditions of said mortgage having been broken:
>
> That certain parcel of land with all buildings and improvements thereon more particularly described in said mortgage deed recorded in said Book 2429 at Page 133.
>
> The above premises will be sold subject to all taxes, assessments, and other encumbrances, which may constitute a prior lien thereon, and will be conveyed subject

to any easements, restrictions of record, tenancies, and rights of redemption for unpaid federal taxes, if any, as shall, notwithstanding this provision, constitute valid liens or encumbrances thereon after said sale.

Terms of sale: deposit of Five Thousand Dollars ($5,000.00) in cash, certified check, or bank check at time and place of sale. Other terms and conditions will be announced at the sale.

By order of the holder of the mortgage, who hereby gives notice of intention to bid at said sale or any postponement or adjournment thereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 9 day of May, 2006,

James Oliveira

James Oliveira, Plaintiff