James Oliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| James Oliveira, Maria deOliveira, Plaintiffs, vs. FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al., Defendants. | ) | Case No.: **06-cv-00214-ML-LDA** |

**RENEWED** EMERGENCY MOTION FOR PRELIMINARY INJUNCTION
[ EXPEDITED HEARING REQUESTED ]
[ APPEARANCE WAIVED ]
[ FRCP 65, 65.1 ]

**CERTIFICATION**

The undersigned certifies that the undersigned has in good faith attempted to confer with the Defendant's attorney in an unsuccessful effort to resolve the dispute without court action.

The undersigned hereby certifies that this motion is made to avoid irreparable harm and relief is needed in less than 7 days.

///

# MOTION

1. Comes now Plaintiff James Oliveira and moves for an injunction to prevent Defendant "Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc." and its attorneys, Partridge Snow & Hahn LLP, from selling Plaintiffs' house at an unlawful nonjudicial foreclosure sale scheduled for September 12, 2006, until such time as the litigation is completed.

2. As shown by the attached Declaration, Defendant intends to sell Plaintiffs' property at a purported nonjudicial foreclosure sale.

3. As shown by the attached Declaration, Defendant has no legal justification to sell Plaintiffs' property.

4. Plaintiff requests expedited relief on this Motion.

5. Plaintiff waives hearing on this Motion.

6. The reasons why the Court's order denying Temporary Restraining Order should be revisited are as follows.

7. Plaintiffs have a likelihood of prevailing. Plaintiffs have produced evidence that First Residential did not make a loan to Plaintiffs (DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, Docket #3, para 10); and that neither Plaintiffs, nor anyone related to Plaintiffs, ever received any dollars from First Residential (*Id.*, para 11). Defendants have provided no evidence to the contrary. This alone ought to cause this Court to enjoin Defendants from selling Plaintiffs' property. Can any mortgage company in the District of Rhode Island, having never made a loan, contact a randomly chosen homeowner and announce that the homeowner is in default and the company is going to do a nonjudicial foreclosure sale, all with the Court's blessing?

8. In the event that this Court is persuaded, by unsworn statements of counsel or otherwise, that a loan did take place, Plaintiffs have also presented evidence that First Residential never gave Plaintiffs two copies of Notice of Right to Cancel (*Id.*, para 12); that Plaintiff James Oliveira timely gave Notice of Rescission to First Residential, satisfying 15 U.S.C. 1635(a) (*Id.*, para 18). Defendants have provided no evidence to the contrary. Under the Truth in Lending Act, 15 U.S.C. 1635(b), any security interest possessed by Defendants became void as a matter of law the moment First Residential received the Notice of Rescission.

9. Plaintiff consents to the giving of security.

10. This motion is supported by the accompanying DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION and the accompanying MEMORANDUM IN SUPPORT OF RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION.

Respectfully submitted,

DATED August 29, 2006. By: James Oliveira

James Oliveira, plaintiff

James Oliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | ) | Case No.: **06-cv-00214-ML-LDA** |

MEMORANDUM IN SUPPORT OF

**RENEWED** EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

**Discussion of Truth in Lending Act**

Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from the uninformed use of credit. See *Mouring v. Family Publication Services, Inc.*, 411 U.S. 356, 363-4, 36 L. Ed. 2d 318, 93 S. Ct. 1652 (1973) (citing H.R. Rep. No. 1040, 90th Cong., 1st Sess., 13 n. 18 (1967); S. Rep. No. 392, 90th Cong., 1st Sess. 1-2 n.19 (1967)). The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer. *Riggs v. Government Employees Financial Corp.*, 623 F. 2d 68, 70-71 (9th Cir. 1980).

Under TILA, a borrower generally has three days within three days within which to rescind a transaction. See 15 U.S.C. § 1635 (a); C.F.R. § 226.23 (b)(1). If the creditor fails to provide the borrower with two notices of his rescission rights, the right to rescind extends to three years from the consummation of the transaction. See 15 U.S.C. § 1635 (f); C.F.R. § 226.23 (a)(3).

***FULL DISCLOSURE INCLUDES THE DELIVERY OF TWO COPIES OF NOTICE OF RIGHT TO CANCEL***

12 C.F.R. § 226.23(b) states:

> **(b)(1)** ***Notice of right to rescind.*** In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in §§226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

***THE CONSUMER HAS THE RIGHT TO RESCIND UNTIL THREE DAYS AFTER FULL DISCLOSURES ARE MADE, UP TO A MAXIMUM OF THREE YEARS***

15 U.S.C. § 1635(a) states:

> **(a) Disclosure of obligor's right to rescind**
> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the

> obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. [Emphasis added.]

15 U.S.C. § 1635(f) states:

> **(f) Time limit for exercise of right**
>
> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if
>
> (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding * * * [Emphasis added.]

The implementing Regulation Z, 12 C.F.R. § 226.15(a) states:

> **§ 226.15 Right of rescission.**
>
> **(a)** ***Consumer's right to rescind.*** (1)(i) Except as provided in paragraph (a)(1)(ii) of this section, in a credit plan in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind: each credit extension made under the plan; the plan when the plan is opened; a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased.
>
> (ii) As provided in section 125(e) of the Act, the consumer does not have the right to rescind each credit extension made under the plan if such extension is made in accordance with a previously established credit limit for the plan.
>
> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.
>
> (3) The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.
>
> (4) When more than one consumer has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

***UPON THE CONSUMER'S EXERCISE OF RIGHT OF RESCISSION, THE SECURITY INTEREST BECOMES VOID***

15 U.S.C. § 1635(b) states:

> When an obligor exercises his right to rescind...any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor...shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. [Emphasis added.]

The implementing Regulation Z § 226.23 (d) tracks the language of the statute:

> *Effects of rescission.* (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge. (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall...take any action necessary to reflect the termination of the security interest. [Emphasis added.]

Both the statute and the regulation are supported by case law: "[TILA] provides...that any security interest becomes void upon such a rescission." *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. Hawaii, 2003). "[T]he security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." *Large v. Conseco Finance Servicing Corporation*, 292 F.3d 49, 54-55 (1st Cir. 2002), cited with approval in *Yamamoto*.

Within the meaning of TILA, 'rescission' means a remedy that restores the *status quo ante*. *Quenzer v. Advanta Mortgage Corp. USA*, 288 B.R. 884, 888 (D. Kan. 2003) (citing *Ray v. Citifinancial, Inc.*, 228 F. Supp. 2d 664 (D. Md. 2002)).

When the consumer rescinds, creditor's lien is automatically void. If the creditor presses on with foreclosure, he may be subject to an injunction and later liability for ignoring efforts to rescind. 6 *George Mason Law Review* 191, 216 (Winter, 1998):

> When the consumer rescinds, the creditor's lien is automatically void. [*fn 185]

> Therefore, the creditor does not have anything to foreclose. **If the creditor** throws caution to the wind and **presses on with a foreclosure suit despite the consumer's rescission, the creditor may be subject to an injunction** [*fn 186] **and later liability** for ignoring the consumer's legitimate efforts to terminate the transaction. [*fn 187]
> Footnote 185: See 12 C.F.R. § 226.23(d)(1).
> Footnote 186: See NATIONAL CONSUMER, supra note 10, § 6.6.3.1 & nn.307-09.
> Footnote 187: See 15 U.S.C. § 1640(a)(1994 & Supp. I 199).

Upon exercise of the right to rescind, the creditor is required to remove its security interest from the property. Failure to do so may subject the creditor to additional liability in damages. *Rollins v. Dwyer*, 666 F.2d 141, 145 (5th Cir. 1982); *Williams v. Gelt Financial Corp.*, 237 B.R. 590, 599 (E.D.Pa. 1999); *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504, 510 (E.D.Pa. 1985).

[A]ll that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137 (11th Cir. 1992).

Courts have no discretion to alter TILA's substantive provisions. *Semar v. Platte Valley Federal Savings & Loan Association*, 791 F.2d 699, 705-06 (9th Cir. 1986).

In *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137 (11th Cir. 1992), a case relied upon by the Maine Bankruptcy Court in *In re Lynch*, 170 Bankr. 26 (Bankr. D. Me. 1994), the Court of Appeals for the Eleventh Circuit considered 15 U.S.C. § 1635 (b) and 12 C.F.R. § 226.23(d)(1)-(4), while recognizing that "the sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission. It noted the following:

> Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in replevin or assumpsit to insure that the non-rescinding party will restore him to the position that he was in prior to entering into the agreement, i.e., return earnest money or monthly payments

and void all security interests. Under § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first.

**Discussion of Evidence**

All evidence in this case so far has been provided by Plaintiffs. Defendants have not introduced any evidence. Statements of counsel in brief or in argument are not facts before the court. Trinsey v Pagliaro D.C.Pa. 1964, 229 F. Supp. 647.

**Facts**

For evidence of each of these facts, see the corresponding numbered paragraphs of the accompanying DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION. See also the DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [3]. See also the VERIFIED COMPLAINT [1], which was signed by both James Oliveira and Maria Oliveira.

1. There is a record in the county records (recorded on 7/21/2005 at Book L2429 Page 133 in the records of Providence County) appearing to show that on July 14, 2005, Plaintiffs entered into a consumer mortgage refinance transaction (Loan No. 10046020) with FIRST RESIDENTIAL MORTGAGE NETWORK ("First Residential"), through its employees, servants and agents in which the extended consumer credit was subject to a finance charge and was initially payable to First Residential.

2. First Residential did not lend any money to Plaintiffs.

3. Neither Plaintiffs, nor anyone related to Plaintiffs, ever received any dollars (as defined by Congress) from First Residential.

4. At all times relevant to this action, First Residential regularly extended and offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof. The obligation was secured by the Homestead and principal dwelling of Plaintiff. The obligation was initially payable to First Residential on the face of the note or contract. Thus First Residential was "the creditor" under 15 U.S.C. § 1602(f), 12 C.F.R. § 226.2, and 15 U.S.C. § 1635(a).

5. The mortgage was a "residential mortgage transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

6. Upon information and belief, neither First Residential, nor anyone related to First Residential, ever paid any consideration for the aforementioned Note and Mortgage.

7. First Residential failed to give all material disclosures required by the Truth in Lending Act.

8. First Residential failed to give Plaintiffs two copies of Notice of Right to Cancel.

9. Plaintiffs have a continuing right to rescind the transaction until the third business day after they receive all "material disclosures" pursuant to Section 125 (a) of the Act (15 U.S.C. 1635 (a)) and Regulation Z § 226.23 (a) (3) (12 C.F.R.§ 226.23 (a) (3)).

10. First Residential's alleged Mortgage stated:

> "Lender" is First Residential Mortgage Network, Inc., DBA FRM Network, Inc., organized and existing under the laws of Kentucky. Lender's address is 9500 Ormsby Station Rd, Louisville, KENTUCKY 40223.

11. The alleged mortgage was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

12. On or about August 26, 2005, Countrywide Home Loans, Inc. claimed to have been assigned the servicing rights by First Residential.

13. On or about September 19, 2005, First Residential mailed to Plaintiffs a notice stating that it had transferred its servicing rights to Countrywide. There was no mention of whether First Residential had changed or retained its alleged status as Lender.

14. On or about October 21, 2005, Countrywide mailed to Plaintiffs a Notice of Default.

15. On or about March 1, 2006, Plaintiff James Oliveira elected to rescind and timely gave Notice of Rescission to First Residential, satisfying 15 U.S.C. § 1635(a).

16. As a matter of law, at the moment the Notice of Rescission was received, First Residential's secured loan was transformed into an unsecured loan, pursuant to 15 U.S.C. § 1635(b).

17. First Residential had a duty to release the security interest, by recording a Full Satisfaction of Lien at the county recorder, within 20 days of receiving Plaintiffs' Notice of Rescission, pursuant to 15 U.S.C. § 1635(b).

18. First Residential failed to respond within 20 days of the Notice of Rescission.

19. First Residential failed to record any release of security interest.

20. On or about March 9, 2005, Mortgage Electronic Registration Systems, Inc. ("MERS") mailed to Plaintiffs a document titled "Assignment of Note and Mortgage" in which MERS claimed to be "the present holder of that certain note and mortgage" and claimed to have assigned "all of its rights, title and interest" to Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.; with a renumbering the loan to No. 94728651.

21. MERS claimed to have made this assignment "for valuable consideration." However, upon information and belief, there was no such consideration.

22. On or about March 24, 2006, a document titled "Notice of Foreclosure" and "Mortgagee's Sale" was mailed to Plaintiffs by Partridge Snow & Hahn LLP, who identified themselves as "Attorneys for Holder of the Mortgage" but never identified who the alleged holder of the mortgage was. This document stated that the property will be sold May 16 2006, "pursuant to the power of sale contained in a mortgage dated July 14, 2005, given to Mortgage Electronic Registration Systems, Inc., as nominee for First Residential Mortgage Network, Inc., d/b/a FRM Network, Inc, and currently held by Countrywide Home Loans, Inc., for the benefit of DB Structured Products, Inc., as mortgagee, by James Oliveira and Maria L. DeOliveira, as mortgagors." However, the power of sale was given to First Residential, not to MERS. A servicer such as Countrywide normally does not have power of sale, and there is no evidence that First Residential ever assigned its power of sale.

23. Plaintiff James Oliveira has requested validation and verification of the debt under the Fair Debt Collection Practices Act. So far, Partridge Snow & Hahn LLP has not responded.

24. On or about April 19, 2006, Plaintiffs gave Second Notice of Rescission to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.; to Countrywide Home Loans, Inc. for the benefit of DB Structured Products, Inc.; to First Residential Mortgage Network; to DB Structured Products, Inc.; and to Charles A. Lovell, Partridge Snow & Hahn LLP, satisfying 15 U.S.C. § 1635(a).

25. First Residential failed to respond within 20 days of the Second Notice of Rescission.

26. First Residential continued to fail to record any release of security interest.

27. First Residential has not yet complied with the law regarding Plaintiffs' rescission of the loan.

**Standard for Injunction**

1. In making its ruling on the propriety of a preliminary injunction, this court is bound by the considerations contained in the decision of Canal Authority of Florida v. Callaway and its progeny. Pursuant to this authority, the plaintiff in this matter has the burden of demonstrating to this court four specific criteria:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and;

(4) that granting the injunction will not disserve the public interest.

Rodriguez v. United States, 66 F.3d 95, 97 (5th Cir. 1995); Hull v. Quitman County Bd. of Educ., 1 F.3d 1450, 1452 (5th Cir. 1993); Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974). Where the balance of harms strongly favors plaintiff, a serious question for litigation will justify an injunction even without a determination of probable success. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929); *see also Atchison, Topeka, & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 822 n.15 (1973).

2. The central problem that gives rise to the need for injunctions is the risk that plaintiff will be irreparably injured before the slow processes of litigation can reach a final decision. But the solution to this problem has its own central problem: the court is more likely to err when it acts on partial information after a preliminary hearing, and such an error may lead to an order that causes irreparable injury instead of preventing it. In the face of these conflicting risks,

"the preliminary injunction standard should aim to minimize the probable irreparable loss of rights caused by errors incident to hasty decision." John Leubsdorf, *The Standard for Preliminary injunctions*, 91 Harv. L. Rev. 525, 540-41 (1978). The traditional four factors implement this standard if the relationship among them is properly specified. The risk of irreparable injury to plaintiff is explicitly one of the four factors; the risk of irreparable injury to defendant if the injunction is granted is considered under the balance of harms factor. The effect on the public interest allows consideration of any risk of harm to third parties or the general public. The risk of error is assessed under the probability of success factor. The key to making the traditional four factors work is to assess the risks of irreparable injury in light of the probability of success on the merits. If plaintiff is highly likely to win on the merits, the irreparable injury threatening plaintiff is more likely to be legally unjustified, and any threatened injury to defendant is more likely to be the justified consequence of the substantive law's allocation of rights. The opposite is true if plaintiff is unlikely to succeed on the merits. The threatened harms to each side should therefore be weighted by -- or more realistically, assessed in light of -- each side's probability of success on the merits. Professor Leubsdorf illustrated this analytic approach with a numerical example, in which probability of success and threatened irreparable injury to each side were quantified, each side's threatened injury was mathematically discounted for its probability of success, and the discounted values compared. Leubsdorf, 91 Harv. L. Rev. at 542. Judge Posner expressed Leubsdorf's approach in the form of a mathematical inequality written in algebraic notation. *Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd.*, 780F.2d 589, 593 (7th Cir. 1986). Of course the prospect of quantification was illusory, and these mathematical formulations drew heavy criticism. Leubsdorf and Posner had no illusions about quantification; their math was intended only as a (probably unfortunate) illustration. But their analytic concept is sound. It is widespread in the cases and supported by leading scholars in the field. The leading treatise describes the traditional four factors as imperfectly stating the basic point: [T]he gist of the standards is probably easy to understand in common sense terms even if the expression is imperfect: the judge should grant or

deny preliminary relief with the possibility in mind that an error might cause irreparable loss to either party. Consequently the judge should attempt to estimate the magnitude of that loss on each side and also the risk of error. Dan B. Dobbs, *Law of Remedies: Damages-Equity-Restitution* 12.11(2) at 255(2d ed.West 1993).

3. If plaintiff shows that it can probably prove a prima facie case, and defendant fails to show that it can probably prove its affirmative defenses, it necessarily follows that plaintiff will probably succeed on the merits. The Court adopted this straightforward reasoning in *Ashcroft v. ACLU*, 542 U.S. 656 (2004), and in an analogous context in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The lower courts were generally in agreement even before *Ashcroft*.

4. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256.

5. Courts commonly say that plaintiff in an injunction case must prove some combination of four factors: probability of success on the merits, irreparable injury, balance of harm, and public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987); *Camenisch*, 451 U.S. at 392.

Consideration of the "comparative injury" to each side was a "settled rule" at least by the time of *Russell v. Farley*, 105 U.S. 433,438 (1881). And this injury was already assessed in light of probability of success: "[I]f the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party." *Id.* The converse of this proposition is that where the legal right is more certain, the court is less reluctant to impose material injury on the party likely to lose. Where the balance of harms strongly favors plaintiff, a serious question for litigation will justify an injunction even without a determination of

///

///

///

///

probable success. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929); *see also Atchison, Topeka, & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 822 n.15 (1973).

Respectfully submitted,

DATED August 28, 2006. By: James Oliveira
James Oliveira, plaintiff

James Oliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC.; et al.,<br><br>Defendants. | Case No.:<br>**06-cv-00214-ML-LDA**<br><br>**PROPOSED ORDER** |

Plaintiffs' **RENEWED** EMERGENCY MOTION FOR PRELIMINARY INJUNCTION having been considered on the premises, the motion is GRANTED and it is hereby ORDERED, ADJUDGED AND DECREED:

That pending further order of the court, Defendants are enjoined from selling Plaintiff's home at **56 Greene Street, Pawtucket, Rhode Island 02860.**

The reasons for the issuance of this Order are: that First Residential did not lend any money to Plaintiffs; that Plaintiffs did not receive any dollars from First Residential; that First Residential failed to give Plaintiffs all material disclosures required by the Truth in Lending Act; that First Residential did not give Plaintiffs two copies of Notice of Right to Cancel; that Plaintiffs timely gave Notice of Rescission to Defendants.

DATED: ______/______/2006 By:______________________________
Judge

James Oliveira
56 Greene Street
Pawtucket, Rhode Island 02860

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| James Oliveira,<br>Maria deOliveira,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST RESIDENTIAL MORTGAGE NETWORK, INC., DBA FRM NETWORK, INC., et al.,<br><br>Defendants. | Case No.: **06-cv-00214-ML-LDA** |

CERTIFICATE OF SERVICE

The undersigned certifies that on the date last written below I served a true copy of:

RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUCTION

DECLARATION OF JAMES OLIVEIRA IN SUPPORT OF
RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUCTION

MEMORANDUM IN SUPPORT OF RENEWED EMERGENCY MOTION FOR PRELIMINARY INJUCTION

PROPOSED ORDER

on the following parties by U.S. first class mail, postage prepaid:

**Countrywide Home Loans, Inc.**
**DB Structured Products, Inc.**
**First Residential Mortgage Network, Inc.**
c/o Attorneys for above defendants:
**Lisa M. Martinelli**
**Charles A. Lovell**
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903:

Maria deOliveira
56 Greene Street
Pawtucket, Rhode Island 02860

Executed on this 29 day of August, 2006,

By: James Oliveira
James Oliveira, Plaintiff